Good morning, everyone. The first argued case this morning is No. 09-3174, Dishart v. Department of Homeland Security. Mr. Woodfield. Thank you, Your Honor. Nicholas Woodfield on behalf of Petitioner Jeffrey Dishart. December 2006, Petitioner Jeffrey Dishart reported to his supervisor at the Department of Homeland Security, Mark Ramondi, his schedule for reserve duty as a United States Air Force reserve officer for the next six months. In response to receiving notice from Mr. Dishart that Mr. Dishart was going to have to be absent for Fridays from that point on, every Friday from that point on, Mr. Ramondi simply responded, that's not going to work. Let me ask you a question just out of the box, which wasn't reflected by the record. My understanding is that a typical reserve commitment is two weeks in the summer and one weekend a month, or something along that line. This seems like a very unusual and quite extensive commitment of one day a week. Is that normal? How did this come about? Your Honor, Mr. Dishart was involved in public affairs at the Pentagon as well. Mr. Dishart started off as a fighter pilot in the Air Force. He did public affairs work at both the Pentagon, but he also did it at the Department of Homeland Security. If you'll recall, this was in 2006, there was a more escalated state of the Iraq war at that time. He was called upon not necessarily to go for two weeks to go to say, Istanbul or Iraq or some foreign destination. He was called upon to do bureaucratic work at the Pentagon. The Pentagon said, we need you on a weekly basis. While it's, my understanding, it's unorthodox, it was the orders that were given to him by his Air Force. He was not free to say simply, I can't work with that. So he actually had orders for that extra time. I had the same concern because I knew that the statute, that which one is entitled to, was defined in the statute so that when his agency suggested that he work a full 40 hour week and make up the time some other way, that's the concern, is it not? Yes, it is. But that's where we get into the crux of the matter, Your Honor. This gentleman had this duty put upon him by the Air Force. It was an order from his commanding officer. And as an order to show up and the agency did not dispute that he had received these orders and it did not dispute that this was a valid order. And Mr. Dishart, and it didn't dispute that Mr. Dishart was not free to disagree with his orders and just say, I'm not going to show up, in which case he could potentially even be court-martialed. But they also never denied him leave. I mean, until he, am I wrong? They denied him unpaid military leave. That is one of the counts that we make. They gave him, the agency provided him with the paid military leave eventually. Now, at first, Mr. Dishart requested military leave and was not given it. He had to take annual leave. The agency subsequently went back and corrected its records and credited him for the annual leave and gave him military leave. And he was entitled to a certain amount of paid military leave. Right. So they gave him what he was entitled, paid military leave. Statutorily, it's 15 days. But they also, yes, yes. So I'm trying to... But he's also entitled to take unpaid military leave, which he was not given. He had to take it as annual leave or some sort of personal leave. He was not given unpaid leave as he had requested. Moreover, in the denial of leave in a... Well, that would be leave without pay, right? Yes. Right. And was he expressly denied leave without pay? He was asking for military leave and he had to take it as annual leave. Well, my understanding is, correct me if I'm wrong, is that what you do in this situation is you use up all of your paid military leave, you then use up your annual leave, and then beyond that you take military leave or leave without pay. Is that not correct? That's the employee's choice if they choose to take their annual leave for that. If they would like to take vacation time at some other point as paid time, they can opt to do it. But they don't have to take their annual leave, exhaust their annual leave, then exhaust their sick leave, and then get into unpaid leave. Your argument is that he was forced against his will to exhaust his annual leave before and instead of using leave without pay? Yes, that's one of the arguments. Moreover, to deny... So do we have in the record actual requests that he made a request for leave without pay and that was denied? I would have to go through the record right now. I don't have that sight at my fingertips. But that's what you're telling us? That's what happened. He asked for leave without pay. Yes, and he was... To cover those Fridays or whatever. Yes. Moreover... I thought that leave without pay may or may not have been available. What he wanted was leave with pay. Leave without pay is absolutely available to federal employees on USARA leave. Otherwise, say they had a six-month hiatus and they went... At some point, say they were called up for a six-month tour of duty in Iraq and they had to take a six-month leave from their current employment with, for example, the Department of Homeland Security, that would be leave without pay. They were taking military leave without pay. They wouldn't have to take it as annual leave or vacation time. They wouldn't have that much time. Well, if you look at JA-15, I'm just looking at the AJ's opinion, just one portion of it, which I had cited where she talks about or he talks about the appellant alleged five losses of employment benefits. So is this one of the losses of employment benefits? It's one of the denials, yes. Denials. Okay, because I'm not seeing it. Now, I would also point out that the denial of the benefits is a a 38 USC 4312 violation, which is strict liability. In this situation, when he was denied military leave, paid military leave, the situation... Wait, we were talking about denial a few minutes ago. We were talking about denial of the ability to take leave... Unpaid leave. Unpaid leave. Yes. So now you're switching over to the denial of paid military leave? Well, he initially asked for paid military leave. It was denied and then it was subsequently given to him in retrospect, which under Burlington Northern is illegal. It's illegal what? To try to fix a clerical error that you made previously? No, it doesn't. It's a mitigation of an issue, but... Well, what flows from that? Well, at that point... If they fixed it. I mean, what's he entitled to that he didn't get? He's entitled to injunctive relief so that this doesn't continue in perpetuity. Well, but I thought it was a one-time deal. It was something that happened, it was fixed, and all that occurred prior to the time that he actually filed his appeal. It was corrected after his employment ended, is my understanding. But before the appeal, right? Right. But in such a situation, you don't want to, as a matter of public policy, the government doesn't want to say, you know, look, we can make these people take annual leave instead of paid military leave until the cows come home, until they file an appeal, and then we can just negate their appeal by giving them back their time. Burlington Northern says that people sustain injuries by being... by having the benefits of their employment withheld, even for as short a time as 38 days, which was the time in Burlington Northern. But what kind of an injun... So you sought an injunction in this case with respect to that allegation? We sought injunctive relief, among other things, at the MSPB, which is one of the remedies available at the MSPB when you have an... But assuming, in order to have an injunction, by this time he's resigned. So, I mean, I know you're alleging constructive discharge, but assuming indeed, in fact, that there was no constructive discharge and he had just resigned, that would kind of take the injunction off the table, right? It would. Because he was no longer on the roll. Yes, Your Honor, that's correct. So if the injunction is off the table, what's on the table with respect to this error that was made? Mr. Dishart is asking for reinstatement right now. But you don't get reinstatement because there was an error which was corrected, right? No, not when there's an error that was corrected. But Mr. Dishart is claiming that he was constructively terminating, terminated, and he wants to go back to work at Department of Public Services. I know, but that's a separate claim. It is. And I agree. Yes, Your Honor, it is a separate claim. But if he is reinstated back there, he wants an injunction to stop the harassment. Part of it would, which would be the denial of paid leave. What's your best case on a constructive discharge? I mean, looking at our precedent and what we've described as the criteria. Mr. Ashby acted with the express authorization as the agent of the Department of Homeland Security. In his testimony in this matter, he expressly testified on, in the joint appendix at 126-187. And prior to your resignation from ICE in 2006 and 2007, were you a GS-14 supervisory employee and labor relations specialist? Correct. That's correct. And your job duties as a supervisory employee labor relations specialist included giving managers advice on hearing out ICE policies regarding any personnel matters. The answer to that is correct. And it's fair to say that as an ELR specialist at ICE, you had a management hat on at all times, is that correct? Correct. And that's because your role is to assist ICE managers to do what is best for the agency. That is correct. So in any labor dispute, you always were on the side of the managers at ICE, correct? That is correct. And then over to 126-188, question. In your capacity, you were not there to assist employees in disputes with managers, correct? Answer, that's not my function. My function is to wear a management hat. Mr. Ashby presented three options to Mr. Dishart. When Mr. Dishart was complaining about the harassment that he was undertaking, the court, the administrative judge specifically noted in page 31 of the joint appendix, that the administrative judge said there were clearly tensions between Mr. Rimonde and the appellant regarding his unusual reserve duty work schedule. There are two separate issues, right? You're raising the Ashby issue, and then are they the same or isn't there a dispute? It is. I'm just laying the predicate. I promise I'll be there in one minute. And Mr. Rimonde often expressed concern about the appellant's completion of his job duties. This does not seem unusual because essentially, the appellant was seeking to do a full-time job on a part-time schedule. Where this wraps up, Your Honor, is in the email wherein Mr. Dishart says, I'm going to give up. I give up. I quit. He wrote to Mr. Ashby on, and this is at page 95082 of the joint appendix, and he said, Tony, good seeing you again today. I did talk to my wife this weekend about the three options we talked about last week. Since she's just recovering from her kidney transplant, and since the reserves may be retaining me for another year with a possible torn erect, we have decided that going with the option to begin looking for another situation where military leave is not such an issue is best decision for us. In your mediator role, would you mind passing on my decision to begin a search for another position outside of ICE in exchange for a, open quotes, hands-off posture on my military duty, a turning down of the heat on my work here, and being allowed occasional leave needed for interviews until the end of May when I depart? Just to be sure I understand what you're asking for, you're asking for reinstatement with authorization by injunction or whatever, not only for the statutory military leave, but with authorization to take as not as leave of any sort or as paid military leave the additional time that is being requested of Mr. Dessart. The paid or unpaid military leave, yes, Your Honor. You're not asking for paid military leave beyond the 15 days? No, Your Honor. Which is what he got, right? Correct. So you're asking that the time be authorized during the ordinary work week without fulfilling any of the alternatives that Mr. Ashby proposed, such as working four days? Yes, Your Honor, and that's exactly because the options that Mr. Ashby proposed were all legal options. In the Fourth Circuit, stated in Hill v. Michelin, North America, which is at 252 Federal 3rd 307, it's cited to this court's own decision at page 313 of its decision when it said, given the broad reach of USERRA and its purpose of protecting the interests of those serving in uniformed services, we believe that the Q Laboratory's more regular schedule is properly viewed as an advantage of the job under USERRA's definition of benefit and employment. And it cited the Allen v. United States Postal Service case in the Federal Circuit that concluded that a position's desirable schedule with daytime regular hours is an incident or advantage of employment. When Mr. Ashby said, I want you to change your schedule and start working late at night, and I want you to start working on Saturdays, those were legal options. Every option he told Mr. Dishart to get out from underneath the thumb of Mr. Raimondi was an illegal option. Well, they're illegal only if he was forced to do it. I mean, you know, anybody might suggest to him, like, hey, this is a way to resolve this. I mean, it seems to me the problem you're bumping up with are the findings by the AJ, who credited Mr. Ashby's testimony, which seemed to, you know, and concluded that this was not an order of any kind. These were just suggestions, and this is a perfectly appropriate way of trying to resolve issues. Under Pennsylvania State Police v. Suitors, the standard is intolerability. The question of being told, you cannot go to your military service, you're not going to be allowed to do it, or you're going to have to suffer a disadvantage of employment on one of these three options. Yeah, but the question is, is it a factual question whether or not he was told the latter? I mean, what you're suggesting is he was told, you have to do this. And there's a finding that we have before us that he indeed wasn't told or ordered to do that, that this was just a helpful suggestion by somebody trying to mediate the issues. By the management at DHS. This gentleman was management. He said he was, and the agency never put forth any evidence that Mr. Ashby was not acting on behalf of the management. He testified expressly on behalf of the agency. Let's hear from the agency. Just one other question, just because I wanted to make sure that something's, an argument that's before us. The argument that you made earlier, and I think I have it right, which is that one of the problems was that Mr. Dishart was required to take annual leave instead of unpaid military leave. That's a separate argument. I take it from the Angela Price timekeeper issue between January 26th and February 2nd? Yes, Your Honor. Where do you make that argument in your brief? Because I didn't see it. Admittedly, Your Honor, it's scarce in there. Well, is it there at all? No, Your Honor. It's not in your brief? No, Your Honor. Okay, let's hear from the agency. Ms. Havasek. May it please the Court, the MSPB's determination that the agency did not violate Mr. Dishart's USARA rights is supported by substantial evidence and should be affirmed by this Court. The main argument is that Mr. Dishart was constructively removed from his position because a hostile work environment was created that was due to his military leave. The standard that the person would have felt compelled to resign under these circumstances, and the administrative judge found that no, in fact, a reasonable person wouldn't have felt compelled to resign. The administrative judge does note that there was some tension between Mr. Raimondi, who was his supervisor, and Mr. Dishart, but that tension was not due to his military service directly. Well, if the agency, if the military gave orders as a reservist to Mr. Dishart, doesn't the government have an obligation to accommodate perhaps to the discomfort of the agency rather than to the discomfort of the reservist? Yes. We don't dispute that USARA requires the agency to give any military leave, up to 15 days of military leave. Well, that's the statutory amount. There's no dispute that this exceeded the statutory amount. Right. That was the period to which my question was directed. There's no question that this exceeded the statutory amount. There's no question that this exceeded the statutory amount, and there's no question that under USARA, if he needed an additional amount for military service, that he was entitled to that amount, not as military leave, but as what the agency did, which was additional annual leave. The argument that Mr. Dishart raised, as far as I can tell, for the first time in this argument today about leave without pay as opposed to annual leave, that was not an argument raised below. No, but there are arguments with respect to constructive discharge, and I've lost a little track about what was credited and what was not credited, but at least some of it. I mean, a supervisor says, this isn't going to happen. That's something that one would take into account, would they not? Well, it's important to note that he was never denied any military leave, first of all. Even if Mr. Raimondi had expressed some concerns about him being absent from the office, no one ever told him, you cannot take every Friday off, and in fact, he did take every Friday off. Well, you say that, but if in fact, I don't know, did the AJ credit that statement where Mr. Dishart's contention that Mr. Raimondi said, this isn't going to happen? I know there was some other testimony about pounding the desk and throwing leaf slips around, and that may not have been credited. Right. The AJ did not credit those statements. The AJ didn't specifically say, these statements are not credible, but based upon her conclusion that there was no hostile work environment back here, it's clear that she did not credit those particular statements. It's also clear Well, if you're a person, you go up to your supervisor in this context, and let's assume there's some tension or some level of authority. I mean, I know things vary from office to office, but at least there's some assumption this person controls my whole fate, my job, my benefits, my future, and you apply for this military leave, annual leave, leave without pay or whatever, and your supervisor says, this is not going to happen. It seems to me, isn't that really telling clearly any reasonable employee that you better stop asking for this, or that in the future, your request may very well be denied? No, not necessarily. Again, the record here shows that even if that was said, it was more of a concern. This was an unusual military leave schedule. A normal military leave would be working on weekends and then two weeks off during the year. Mr. Rimondi was just concerned about the unusual aspect of this schedule, but he didn't, there is evidence that points to the fact that he wouldn't have said something like, this is not going to happen. What he did was he went and discussed with Mr. Ashby, is this a reasonable military leave? What can I do about this? I'm concerned about my employee being absent every Friday. Mr. Ashby then told him, yes, this is required. You have to let him take the leave, and Mr. Ashby's testimony was that Mr. Rimondi appeared to understand that the leave was required. I think we can all agree that perhaps the most charitable characterization of the agency's position here per Mr. Rimondi was grudging acquiescence. At times, it became particularly grudging. It sounded like Mr. Rimondi was not shy about expressing his feelings about this in one way or another. And then the question just comes down to, I suppose, whether his attitude towards Mr. Dishart made it plain that, to Mr. Dishart, that this was going to go nowhere good and that he'd better get out while he could rather than being fired or some other consequence. And your position is that he didn't wait long enough. He should have waited until he'd gotten fired. No, our position is that any of the discussions between Mr. Rimondi and Mr. Dishart concerning this, even if those were tense discussions, did not rise to the level of whether a reasonable person would have felt compelled to resign. It's also true that these discussions or tensions or, well, Mr. Rimondi's attitude towards Mr. Dishart was expressed similarly towards other employees, not necessarily in the realm of Mr. Dishart. There was testimony that he was very specific about work details, that he often berated other people for different things. So while it may have, at some level, been about the leave for Mr. Dishart, it was a similar attitude that he took towards all employees. Would it have been a reasonable conclusion for an employee in Mr. Dishart's situation to assume that even though they're giving me this leave, this is going to come back to haunt me in one way, shape, or form in terms of my appraisals or promotability given the antagonism my supervisor feels towards this? Me being dragged, as Judge Bryson said, grudgingly kicking and screaming. Would that have been a reasonable conclusion by this employee? Whether it would have been reasonable for him to assume that there would be problems later on, I'm not sure if I can answer that specifically. But certainly if there had been a problem, if he had gotten a negative performance evaluation saying, you know, we're rating you negatively because you've been out so much on your military leave, that certainly would come closer. I mean, it would be fact dependent, but it would come closer to a USARA violation than just the situation we have here, which is just some tension between a supervisor and employee. The standard here is whether Mr. Dishart was denied any benefit of an employment. Benefit of an employment is not a stress-free work environment. Benefit of employment is things like staying employed, pay, benefits, those kind of things that come as a result of the employment contract or the employment agreement as defined under 4303. So just having a tension-free work environment is not a benefit of employment. Now, if it was a USARA violation, I'm not sure if I can answer Mr. Dishart's law saying that that would be a benefit of employment because obviously being stayed employed is a benefit. But just not having this type of tension is not a benefit of employment under USARA. Further, there's evidence that the tension was not due to the military leave so much as Mr. Dishart's performance problems. The administrative judge details on page joint appendix 32 to 33 numerous performance problems that the agency had with Mr. Dishart that started even before he requested leave. As you recall from the record, for the first two months he was able to agree with his military supervisor not to perform any military duties so that he could get accustomed to his job at DHS. But even during that time when he wasn't taking any leave, there were numerous performance problems that were cataloged, and it was those performance problems that really led to this tension. And because those problems were occurring even before he was on any leave, it's reasonable for Mr. Raimondi to think, well, if he's having problems doing his work while he's here all the time, you know, what's going to happen when he's out of the office every Friday? Help me with the schedule here of when various events occurred. If I understand it, he began work in the summer of 2006, is that correct? November 2006. It was November. Okay. So he goes then, at some point after that, like December of 2006, he goes in to see Raimondi with his schedule, his military schedule, leave schedule? Right. His leave schedule was to start in January of 2007, so sometime in December. Okay. And that's the point at which Mr. Raimondi says, this isn't going to happen? That's what Mr. Descartes testified to. But in any event, that's what the allegation is. That occurs at the outset when the schedule is first presented to Mr. Raimondi? Right. That's right. All right. But then after that, he does have leave or either military leave or leave without pay every Friday from then until he ultimately leaves? Right. He requested leave every Friday and then two weeks, I believe, in early March. So he got all of that leave in some form, the 15 days of military leave he was entitled to and the rest of that time as annual leave after that. So regardless of what Mr. Raimondi said or didn't say or concerns that he raised about the leave, there's no dispute here that he was given all the leave to which he was entitled. But I gather also that when he was hired, he had a different supervisor to whom he explained this situation and who said there'd be no problem and it was only when the supervisor was changed, Mr. Raimondi became his supervisor, that these problems arose. Is that accurate? He had a supervisor, an individual that he initially interviewed with, and during the interview he explained that he would have to be absent for military leave. That was when he was hired. Right. That this wasn't a surprise that he sprung on the agency that the person who had interviewed him when he was first hired had been told, as I recall from the record, that there was this outstanding obligation and said there'd be no problem. Well, it's not clear what the level of obligation was. If it was an explicit agreement between the former supervisor and Mr. Descartes that this wouldn't cause any problems, but certainly there is evidence in the record that he notified the previous supervisor that he was going to have to take military leave and the supervisor indicated that it wouldn't be a problem. Again, it never was a problem in the sense that he was denied leave because he never was denied leave. It was simply concerns that were raised about his performance and his performance if he was going to be out of the office frequently. Those were the concerns of Mr. Raimondi because even when he was in the office full time, he was still having performance problems. So I gather that the government's position is that there was no special obligation on the agency to accommodate this request from the military which exceeded the statutory obligation. No, the agency actually was required to accommodate the request in the sense of allowing him to take the leave. However... That wasn't my question. I said it was a request that exceeded what the statute authorized. Yes. The agency is required to allow him to fulfill his military duty even if it's in excess of 15 days. The difference between the 15 days and beyond 15 days is that the first 15 days are a special category of military paid leave, but if you want to take leave for military duty beyond that time, the agency has to authorize the leave, but you have to choose a different type of leave, either annual leave, leave without pay, in some types of situations sick leave. So that's the only difference, but we're not disputing that the agency was required to give him 15 days and even more than 15 days if that time was required for his military duty. In that case, how can you justify the alternatives that he was offered? Either work for 10 hour days or other procedures whereby he would have put in the full 40 hour week in addition to this military obligation? First of all, the main issue with those options is whether he was forced to change his schedule or whether it was merely a suggestion. I don't know what forcing means. He quit so that there's a certain amount of... I don't know what you mean by forced to do anything. Well, nobody told him you have to work 10 hour days and take Fridays off or you have to work Saturdays. What happened... No, he was offered that alternative in order to resolve the question. He chose not to accept it. So he certainly wasn't forced. Right, he wasn't forced to... But he was forced, by not accepting it, he felt that he needed to leave the agency and find someplace more sympathetic to his military obligations. Well, that issue goes back to the constructive removal. If he felt that he was being forced and so much so that he either had to choose the option or leave the agency, that is the constructive removal allegation. But here, Mr. Ashby was not telling him what he had to do. It was never said to him, you have to work extra time or leave the agency. He was merely... If he was ordered to do one of those two options, then that would be a denial of some benefit that would be actionable. Your position is simply that that's not what happened. It certainly could be. If someone had forced him to either work longer hours or leave the agency, that could be a denial of the benefit of scheduling work hours, but that's not what happened here. Further, the option of working 10-hour days was an option that was offered to all employees. Employees at DHS could, anyone, could take an alternative work schedule if it was approved by their supervisor. So all Mr. Ashby was doing was saying, look, your supervisor has some concerns about you being out. This is a way that we might be able to work with him in order to address those concerns. Also, if you look at one of the regulations, 5 CFR 353.203, that regulation addresses conflicts between military reserve duty and civilian duty, and basically requires an employee to work with the agency and with their military supervisor to try to minimize the impact of one duty on the other duty. Now it doesn't, again, it doesn't permit the agency to deny leave if the military says you have to be here and it interferes with the agency's work, then the military wins out. But there is a requirement that the employee kind of work with both the military supervisor and the civilian supervisor in order to figure out a way that both jobs can be done properly, so that's really... We must move on. Do you have any other questions? Could I get the CFR citation that you read? It's 353.203C. 20... 203C. 3C, okay. Thank you. Any other questions? Any other questions? Thank you, Ms. Hevesy. Mr. Woodfield. Very briefly, Your Honor. Three quick points. In this court's recent decision in Erickson v. United States Postal Service, 571F3, 1364, at page 1368, this court itself recognized the Supreme Court's position in Monroe v. Standard Oil where it said the non-discrimination requirements of the statute referring to the predecessor statute of USERRA impose substantial obligations upon employers. The frequent absences from work of an employee reservist may affect productivity and cause considerable inconvenience to an employer who must find an alternative means to get the necessary work done. Yet Congress has provided that employers may not rid themselves of such inconveniences and productivity losses by discharging or otherwise disadvantaging employee reservists solely because of their military obligations. The burden is to be borne by the employer... Yeah, but you do have a burden to show that he was disadvantaged. Yes, and by... I mean, that's your burden, not the employer's. Yes, and we have. By putting forward the three options that Mr. Ashby presented, a disadvantage is a requirement to change everyone's schedule, or to let my client change his schedule or resign. To change his schedule, the requirement... Well, that's only if we construe your take on that, which was that that was an order and those were alternatives, that it was a sort of a take it or leave it, as opposed to what the AJ concluded, which is those were just suggestions and there was no coercion associated with them. Correct, and that would be under an abuse of discretion standard, Your Honor, but it's also uncontroverted in the record that Mr. Ashby was acting as management based on his own testimony, and that when he received that email wherein he said, I've looked at the three options that you gave me, this is the one we're choosing, he didn't, Mr. Ashby didn't write back and say, hey, hey, hey, I didn't say you've got to pick one of the three of these. I just, I put them on the table and you have millions of options. He didn't say that. He didn't write to clarify. He said, okay, I'm going to go ahead and I'm going to tell everyone you did it. Well, under some circumstances it seems to me that the option of allowing him to work four days, ten hours a day would be very desirable and good for people in this situation because otherwise they're quickly running out of their paid leave of 15 days. He, as he did, so he'd be in a situation of having to get leave without pay or use his annual leave. So it doesn't seem to me that for, I mean, not that they can force him to take it, but that that suggestion seems to me one that's, you know, possibly desirable to certain individuals so that they don't have to get paid less than they otherwise would. Well, it may be, to Your Honor, possibly desirable. This court has previously held in Allen v. United States Postal Service, 142 F. 3rd, 1344, at 1347, or at 1447, forgive me, that that is a violation of USERRA. Well, to force it, but Judge Prost's question, I think, is directed at whether when the agency says, okay, we have a problem here, we're going to put a couple of options on the table that the agency is not required to offer to any employees but has the options, doesn't that, in a sense, improve Mr. Dishart's group of options rather than to restrict them? To say you're going to continue to be harassed for military leave, taking military leave, requesting military leave, taking it, or here are the three options to get around being harassed, that's a Hobson's choice of three legal options. Well, of course, they never said that. I mean, they never said that you're going to continue to be harassed. Well, it was ongoing, and the judge, and this leads to my second point, the administrative judge didn't give credence to the fact that there was, that the tensions between Raimondi and Mr. Dishart were because of his work product. Again, I cite to page 31 of the joint appendix where she said, there clearly were tensions between Mr. Raimondi and the appellant regarding his unusual reserve duty work schedule, and Mr. Raimondi often expressed concern about his completion about the appellant's job duties. This does not seem unusual because, essentially, the appellant was seeking to do a full-time job on a part-time schedule. She didn't find that Mr. Raimondi was really giving this man a lot of grief because he was not a good employee. She was saying Mr. Raimondi was giving the appellant a hard time because of his work schedule. That was her express finding. Now, the fact that the agency said this man treats everyone badly does not negate the A.J.'s own finding. Moreover, the A.J. No, we must move on. If there are no more questions, I think we're well out of time. I think we have the arguments. Thank you.